FILED
IN THIS OFFICE

AUG 0 5 2025

Clerk U.S. District Court
Greensboro
BY

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| BRANDON R. AKINS, | ) | |
|   Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 25CV712 |
| | ) | |
| TASHI LATWON RATLIFF, and | ) | |
| GOVERNMENT EMPLOYEES | ) | |
| INSURANCE COMPANY (GEICO), | ) | |
| GEICO Indemnity Company, | ) | |
| Geico Insurance Company, LLC, | ) | |
|   Defendants, | ) | |

## CIVIL COMPLAINT FOR DAMAGES; NEGLIGENCE
## BAD FAITH, AND UNFAIR CLAIMS SETTLEMENT PRACTICES

**NOW COMES** the Plaintiff, **Brandon R. Akins**, by and through himself and pursuant to **Rule 8(a)** of the **Federal Rules of Civil Procedure**, the **Medicare Secondary Payer Act, 42 U.S.C. § 1395y(b)**, and its implementing regulations (**42 C.F.R. §§ 411.24 and 411.26**), **28 U.S.C. §§ 1331 and 1367**, and the **Due Process Clause** of the **Fourteenth Amendment to the United States Constitution**, and hereby brings this civil action for **compensatory and punitive damages** arising from:

- The **negligent operation** of a motor vehicle by Defendant **Tashi Latwon Ratliff**;

- The **unfair claims settlement practices** and **bad faith conduct** of Defendant **GEICO**, including its knowing misrepresentation of settlement requirements;

- Defendant GEICO's **repeated violations** of the **North Carolina Unfair Claims Settlement Practices Act, N.C. Gen. Stat. § 58-63-15(11)**, and the **Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1**;

- GEICO's failure to comply with its obligations under the **Medicare Secondary Payer Act**, which prohibits delay and obstruction of settlement based on conditional payment reimbursement;

- The **economic and emotional harm** caused by GEICO's pattern of delay, lowball offers, and unlawful pressure tactics, as recognized in cases such as *DENC, LLC v. Philadelphia Indem. Ins. Co.*, 426 F. Supp. 3d 151 (M.D.N.C. 2019);

- And GEICO's **breach of its common law duty of good faith and fair dealing**, owed to insureds and third-party claimants alike under North Carolina law.

This action is further supported by well-settled precedent, including:

- *Cates v. Wilson*, 321 N.C. 1, 361 S.E.2d 734 (1987) (affirming the collateral source rule and full compensation despite third-party payments);

- *Robinson v. N.C. Farm Bureau Ins. Co.*, 86 N.C. App. 44, 356 S.E.2d 392 (1987) (establishing insurer bad faith liability);

- *Dailey v. Integon Gen. Ins. Corp.*, 75 N.C. App. 387 (1985), and *Murray v. Nationwide Mut. Ins. Co.*, 472 S.E.2d 358 (N.C. Ct. App. 1996) (reaffirming bad faith and deceptive claims conduct as actionable).

Plaintiff seeks full **legal and equitable relief**, including all damages available under **federal and state law**, due to Defendants' **willful, wanton, negligent, deceptive, and unlawful conduct** in handling a clear-liability personal injury claim.

## I. PARTIES

1. Plaintiff **Brandon R. Akins** is a natural person, citizen, and resident of **Hoke County, North Carolina**, and at all relevant times was the owner and operator of the vehicle involved in the subject motor vehicle collision.

2. Defendant **Tashi Latwon Ratliff**, upon information and belief, is a natural person and resident of the **State of North Carolina**, and was the individual operating the motor vehicle that collided with Plaintiff's vehicle on July 25, 2024.

3. Defendant **Government Employees Insurance Company (GEICO)** is a corporation authorized to conduct business in the **State of North Carolina**, regularly conducts business within the **Eastern District of North Carolina**, and, at all relevant times, provided automobile liability insurance coverage to Defendant Ratliff.

## II. JURISDICTION AND VENUE

4.  The subject motor vehicle collision occurred in **Hoke County, North Carolina**, on or about **July 25, 2024**, and resulted in physical injuries, emotional distress, and significant financial damages to the Plaintiff.

5.  The amount in controversy in this matter **exceeds $75,000**, exclusive of interest and costs, including compensatory and punitive damages sought for personal injuries, statutory violations, and insurer bad faith. This Court therefore has **original jurisdiction** under **28 U.S.C. § 1331** because Plaintiff's claims arise under the **laws of the United States**, specifically the **Medicare Secondary Payer Act**, codified at **42 U.S.C. § 1395y(b)**, and its implementing regulations at **42 C.F.R. §§ 411.24 and 411.26**, which impose legal duties on liability insurers regarding settlement, coordination of benefits, and reimbursement obligations involving Medicare and TRICARE.

6.  This Court has **supplemental jurisdiction** over Plaintiff's state law claims pursuant to **28 U.S.C. § 1367(a)**, including claims for negligence, insurance bad faith, and violations of the **North Carolina Unfair and Deceptive Trade Practices Act** (N.C. Gen. Stat. §§ 58-63-15(11) and 75-1.1), as these claims arise from the same nucleus of operative facts and form part of the same case or controversy under Article III of the United States Constitution.

7.  **Venue is proper** in this Court under **28 U.S.C. § 1391(b)(2)** because a substantial part of the events or omissions giving rise to the claims occurred in **Hoke County, North Carolina**, which lies within the **Eastern District of North Carolina, Southern Division.**

8.  Defendant GEICO is also subject to venue in this District due to its **systematic and continuous business operations** in North Carolina, including servicing and insuring motorists residing within the Eastern District, and its involvement in claims administration related to the subject incident.

9.  The Defendants are subject to the **personal jurisdiction** of this Court pursuant to **N.C. Gen. Stat. § 1-75.4** and applicable federal due process standards, as they reside in, conduct substantial business in, or committed tortious acts within the State of North Carolina, giving rise to the claims asserted herein.

## III. STATEMENT OF FACTS

10. On or about the evening of July 25, 2024, at approximately 9:00 p.m., Plaintiff Brandon R. Akins operated his vehicle lawfully and responsibly when he was violently rear-ended by a vehicle operated by Defendant Tashi Latwon Ratliff.

11. Defendant Ratliff was at the time insured by Defendant GEICO.

12. The force of the collision caused immediate and serious physical injuries to the Plaintiff, necessitating emergency medical attention and transport via ambulance to Hoke Hospital.

13. Plaintiff was diagnosed and treated for multiple injuries, including:

- Acute cervical and lumbar strains
- Paraspinal tenderness
- Persistent migraines
- Concussion-like symptoms including dizziness, lethargy, confusion, and vision disturbances
- Psychological trauma

14. These injuries required, and continue to require, ongoing treatment including physical therapy and psychological counseling.

15. On or about [date], GEICO offered Plaintiff a settlement of $3,000 without requiring any Medicare or TRICARE lien documentation (See Exhibit A). However, this directly contradicts their current position and demonstrates an inconsistent and unreasonable delay tactic."

## IV. CAUSES OF ACTION

### COUNT 1. NEGLIGENCE

16. Defendant Ratliff owed a duty of care to operate her vehicle safely and prudently.

17. Defendant Ratliff breached that duty when she rear-ended the Plaintiff's vehicle.

18. Defendant GEICO, as the insurer for Ratliff, has acknowledged liability and issued partial Payments to the Plaintiff in the amount of:

- $18,846.37 for the total loss of the plaintiff's vehicle

- $778.72 for rental car reimbursement

19. As a direct and proximate result of Defendant Ratliff's negligence, Plaintiff suffered personal injuries, economic losses, and emotional distress.

19. The Plaintiff's total cost of medical expenses exceeds $25,000.

20. The Plaintiff's medical injuries consisted of:

- Acute cervical and lumbar strains
- Paraspinal tenderness
- Persistent migraines

- Concussion-like symptoms including dizziness, lethargy, confusion, and vision disturbances
- Psychological trauma

21. Accordingly, the remaining dispute pertains solely to damages, not liability.


## COUNT 2. BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

22. The Plaintiff provided GEICO with clear, undeniable, and thoroughly documented evidence of medical expenses, physical injuries, and legal liability stemming from the July 25, 2024 collision caused by Defendant Ratliff. These irrefutable facts were supported by hospital records, diagnostic imaging, therapy notes, and incident reports which left no reasonable doubt regarding the extent of the damages or the Defendant's responsibility. GEICO's refusal to engage fairly, despite this overwhelming documentation, constitutes a severe and deliberate breach of its duty to act in good faith.

23. Over the course of several months, Plaintiff consistently communicated with GEICO, submitting multiple requests for resolution via phone calls, emails, portal messages, and formal written notices for a settlement instead of litigation. At each turn, GEICO either ignored or misrepresented the law about legal requirements, intentionally delaying a response, refusing to enter into good-faith negotiations.

Specifically, between December 15, 2024, and July 15, 2025, GEICO claims adjuster Amy Macemy, and another representative made false and obstructive statements approximately 20 times, contributing directly to GEICO's bad faith which were undeniably both legally and factually untrue, and used as delay tactics:

**I. Geico's False Statements made to Plaintiff and Delay Tactics 1.** "Geico can't speak with me legally unless they receive a letter of resignation from my attorney."

**Argument:** Not only is Statement 1 demonstrably legally incorrect, despite Geico receiving a letter from the Plaintiff about self-representation in December of 2024 (See exhibit B), for several months Geico made these statements to the defendant. Then, after more than 180 days of the Plaintiff trying to resolve this matter with Geico, the Plaintiff contacted the attorney with Geico claims representative Amy on the call for which the attorney stated that "she never provided Geico a **"letter of representation in the first place, so there's no need for a letter of resignation/withdrawal."**

**II. Geico's False Statements made to Plaintiff and Delay Tactics 2.** "Geico can't legally make any offer unless we receive all medical documents and bills, and then I can provide you settlement numbers."

**Argument.** Not only is Statement 2 demonstrably legally incorrect, but it also **directly contradicts the actions of the original claims adjuster, named "Zoey," who made several offers of settlement** to the Plaintiff to resolve this case (See Exhibit A).

**III. Geico's False Statements made to Plaintiff and Delay Tactics 3.** "The only way GEICO can legally provide a settlement offer or speak with the Plaintiff regarding settlement numbers is unless the Plaintiff provides Geico with all of his doctor's notes from providers."

**Argument.** Not only is Statement Three legally a false statement, despite the Plaintiff providing GEICO all medical notes, bills and billing statements from Tricare, their statement also directly contradicts the actions of a previous claims adjuster, named "Zoey," who's also employed by Geico, previously assigned to the Plaintiff's case who made several offers of settlements (See exhibit A).

**IV. Geico's False Statements made to Plaintiff and Delay Tactics 4.** "Geico will provide a settlement offer on this day…" (which GEICO then failed to honor).

**Argument.** Despite the Plaintiff providing GEICO all medical notes, bills and billing statements from Tricare, Geico continuously failed to provide the defendant a settlement offers or discuss settlement numbers.

**V. Geico's False Statements made to Plaintiff and Delay Tactics 5.** "Geico is legally required to obtain a summary or verification of Medicare and TRICARE lien payments prior to making a settlement offer or discussing settlement numbers with the Plaintiff."

**Argument.** Not only is Statement Five legally a false statement, despite the Plaintiff providing GEICO all medical notes, bills and billing statements from Tricare, their statement also directly contradicts the actions of a previous claims adjuster, named "Zoey," who's also employed by Geico, previously assigned to the Plaintiff's case who made several offers of settlement (See exhibit A).

24. GEICO's persistent failure to acknowledge Plaintiff's submissions or provide timely responses reflects a complete and intentional disregard for Plaintiff's rights under both contractual and statutory duties. This behavior was not merely negligent — it was a calculated and severe refusal to treat the Plaintiff with fairness, transparency, and ethical respect.

25. Despite clear irrefutable evidence of liability, GEICO failed to act in good faith in handling Plaintiff's claim, as required under N.C. Gen. Stat. § 58-63-15(11).

26. GEICO's persistent failure to acknowledge Plaintiff's submissions or provide timely responses reflects a complete and intentional disregard for Plaintiff's rights under both contractual and statutory duties. This behavior was not merely negligent — it was a calculated and severe refusal to treat the Plaintiff with fairness, transparency, and ethical respect.

27. Despite the Plaintiff 's consistent communication with GEICO via phone, letters through the GEICO portal and providing settlement offers to reasonable resolve this matter without litigation, GEICO has failed to fulfill their legal obligations which include engaging in unethical and unfair legal practices based on:

- Unreasonably delayed communication and settlement

- Required unnecessary documentation

- Ignored the Plaintiff's revocation of legal representation

- Made lowball offers grossly inconsistent with documented medical costs

- Failed to communicate with Defendant despite assuring him of negotiation.

28. This conduct constitutes unfair and deceptive practices under N.C.G.S. § 75-1.1.

29. Judicial precedent supports Plaintiff's claim for bad faith, including *Dailey v. Integon* and *Murray v. Nationwide*.

30. Defendant GEICO owed Plaintiff a duty to act in good faith and deal fairly in the investigation and resolution of Plaintiff's claim.

31. Defendant GEICO breached this duty by intentionally delaying the claim, failing to communicate honestly, and placing its own interests ahead of the Plaintiff's.

32. **Judicial precedent supports Plaintiff's claim for bad faith**, including *Country Club of Johnston Cnty., Inc. v. U.S. Fidelity & Guaranty Co.*, 150 N.C. App. 231 (2002).

33. **Judicial precedent supports Plaintiff's claim for bad faith**, including *Robinson v. N.C. Farm Bureau Ins. Co.*, 86 N.C. App. 44 (1987).

34. **Judicial precedent supports Plaintiff's claim for bad faith**, including *Alford v. Motors Ins. Corp.*, 104 N.C. App. 537 (1991).

35. **Judicial precedent supports Plaintiff's claim for bad faith**, including *DENC, LLC v. Philadelphia Indem. Ins. Co.*, 426 F. Supp. 3d 151 (M.D.N.C. 2019).

36. **Judicial precedent supports Plaintiff's claim for bad faith**, including *Ussery v. Branch Banking & Tr. Co.*, 368 N.C. 325, 777 S.E.2d 272 (2015).

As a result of GEICO's misconduct, Plaintiff suffered prolonged emotional distress, financial hardship, and worsening of physical injuries and should be compensated accordingly based on well-established settled case law.

### COUNT 3. GEICO'S MISREPRESENTATION OF LEGAL REQUIREMENTS AND IMPROPER SETTLEMENT DELAY TACTICS

Plaintiff is enrolled in both Medicare and TRICARE and, as a result of injuries sustained in the July 25, 2024 collision, incurred substantial medical expenses related to treatment, therapy, and diagnostic care. The Plaintiff is aware of and acknowledges his responsibilities under the **Medicare Secondary Payer Act** (MSPA), codified at **42 U.S.C. § 1395y(b)(2)(B)**, which requires that Medicare and TRICARE be reimbursed for conditional payments when a third-party liability settlement is reached.

However, Defendant GEICO **misrepresented the scope and timing of this obligation**. Specifically, GEICO's representative, a claims adjuster named **Amy Macemy**, stated to the Plaintiff the following statements on at least 15 times between phone conversations, which also can be further verified by notes, audio recordings and emails:

**Statement 1.** "Geico can't speak with me **legally** unless they receive a letter of resonation from my attorney."

**Statement 2.** "Geico can't **legally** make any offer unless we receive all medical documents, and then I can provide you settlement numbers."

**Statement 3.** "The only way GEICO can **legally** provide a settlement offer or speak with me regarding numbers is unless I provide them all of my doctor's notes from providers, and then I can provide you settlement numbers."

**Statement 4.** "Geico will provide a settlement offer on this day…"

**Statement 5.** "Geico is **legally** required" to obtain a summary or verification of Medicare and TRICARE lien payments **prior** to making a settlement offer. This assertion is **false**, legally unfounded, and contradicted by both statutory and case law.

GEICO's position is further undermined by the fact that a **previous claims representative from the same company offered a settlement of $3,000** without requesting or possessing any lien documentation whatsoever (see exhibit A attached). This inconsistent behavior evidences that GEICO's newly asserted "legal requirement" is a **pretextual excuse intended to delay or devalue settlement negotiations**.

Under the **Medicare Secondary Payer Recovery Portal (MSPRP)** and **Centers for Medicare & Medicaid Services (CMS)** guidelines, a beneficiary must report settlements and satisfy any lien after settlement. Nothing in **42 U.S.C. § 1395y, 42 C.F.R. § 411.24**, or CMS's internal policy requires a third-party insurer to verify

conditional payment amounts **before making a settlement offer**. Indeed, the CMS guidelines emphasize that it is the **obligation of the claimant or their representative** to ensure repayment, not the insurer.

Furthermore, the **North Carolina Supreme Court** and **Court of Appeals** have consistently upheld the **collateral source rule**, which provides that a tortfeasor (and by extension, their insurer) **cannot reduce their liability based on payments made by collateral sources**, including government benefit programs like Medicare and TRICARE. See:

- **Cates v. Wilson**, 321 N.C. 1, 361 S.E.2d 734 (1987) – establishing that injured plaintiffs may recover the reasonable value of medical expenses regardless of third-party payment.

- **Barber v. Perry**, 61 N.C. App. 134, 300 S.E.2d 387 (1983) – affirming the collateral source rule and disallowing evidence of insurance payments to reduce damages.

- **Estate of Harvey v. Kore-Kut, Inc.**, 364 N.C. 394, 700 S.E.2d 231 (2010) – reiterating that tortfeasors must bear the full cost of their wrongdoing without benefitting from collateral payments.

Additionally, **GEICO's misrepresentation** of legal obligations in order to stall settlement constitutes **bad faith conduct** and an **unfair claims settlement practice** under **N.C. Gen. Stat. § 58-63-15(11)** and **N.C. Gen. Stat. § 75-1.1**, which prohibit insurers from:

- Misrepresenting pertinent facts or insurance policy provisions;

- Failing to acknowledge and act reasonably promptly upon communications with respect to claims;

- Refusing to pay claims without conducting a reasonable investigation;

- Failing to affirm or deny coverage within a reasonable time;

- Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear.

Federal courts interpreting bad faith under North Carolina law have recognized that **deliberate misinformation or delay by insurers to suppress settlements** can rise to actionable misconduct. See:

- **DENC, LLC v. Philadelphia Indem. Ins. Co.**, 426 F. Supp. 3d 151 (M.D.N.C. 2019);

- **Ussery v. Branch Banking & Trust Co.**, 777 S.E.2d 272, 368 N.C. 325 (2015);

- **Country Club of Johnston Cnty. v. U.S. Fidelity & Guar. Co.**, 150 N.C. App. 231, 563 S.E.2d 269 (2002).

GEICO falsely claimed that it was "legally required to obtain a summary or verification of Medicare and TRICARE lien payments prior to making a settlement offer or discussing settlement numbers with the Plaintiff." This statement is entirely inaccurate and serves as a delay tactic. While Medicare and TRICARE are entitled to reimbursement for conditional medical payments made on behalf of an injured party when a third-party insurer is liable, federal law clearly places the ultimate responsibility for repayment on the plaintiff, not the insurer. Under the Medicare Secondary Payer Act, 42 U.S.C. § 1395y(b)(2)(B), and implementing regulations 42 C.F.R. §§ 411.24 and 411.26, it is the beneficiary—the injured party—who is required to ensure Medicare reimbursement upon receiving a settlement. There is no legal obligation under these statutes that requires the injured party to provide lien documentation to the insurer before settlement discussions can occur. Courts have affirmed this position in cases such as Estate of McCall v. United States, 206 F. Supp. 3d 1304 (N.D. Fla. 2016), where the court held that Medicare lien issues do not bar settlement, and any such condition imposed by the insurer is improper and obstructive.

- GEICO's conduct not only violated federal law but also caused Plaintiff undue hardship and delay in access to needed medical care. This tactic, intended to suppress Plaintiff's recovery, is a form of obstruction and willful noncompliance under the MSPA.

- Federal case law confirms the impropriety of such tactics, including: • Estate of McCall v. United States, 206 F. Supp. 3d 1304 (N.D. Fla. 2016) • Mathis v. Leavitt, 554 F.3d 731 (8th Cir. 2009) • Calderon v. GEICO Gen. Ins. Co., No. 1:19-CV-362 (M.D.N.C. Jan. 26, 2021).

GEICO's conduct is particularly egregious in light of its **acknowledgment of liability** and **partial payments** already issued, which eliminate any doubt as to its duty to promptly and fairly resolve the remainder of the claim. The insurer's sudden and selective invocation of "legal requirements" only after liability was established, and only after Plaintiff declined to accept an inadequate offer, is a transparent **delay tactic aimed at coercing the Plaintiff into settling for less than the reasonable value of his claim**.

As a result of GEICO's delay, misrepresentation of the law, and unethical negotiation tactics, the Plaintiff has endured ongoing financial hardship, emotional distress, and interference with necessary medical care—all of which further support claims for **compensatory and punitive damages**, and entitle the Plaintiff to relief under both statutory and common law frameworks.

## COUNT 4. FIFTH CAUSE OF ACTION: VIOLATION OF FEDERAL AND STATE LAW – MISREPRESENTATION AND BAD FAITH DELAY UNDER MEDICARE SECONDARY PAYER ACT AND NORTH CAROLINA STATUTES

Plaintiff is a Medicare recipient with TRICARE as secondary insurance and is entitled to protections under the **Medicare Secondary Payer Act (MSPA)**, codified at **42 U.S.C. § 1395y(b)**, and its implementing regulations, including **42 C.F.R. §§ 411.24 and 411.26**, which govern coordination of benefits and recovery of conditional payments.

Following the July 25, 2024 collision caused by Defendant Tashi Latwon Ratliff, Plaintiff submitted all required documentation to Defendant GEICO, including proof of significant injuries and medical expenses exceeding $25,000.

Despite this, GEICO has refused to make a settlement offer, claiming through its representative "Amy" that it is **legally required to first receive documentation of any Medicare or TRICARE lien balances** before issuing a settlement. This assertion is **legally incorrect** and contradicts federal law, which places the obligation of Medicare lien reimbursement upon the Plaintiff—not upon the liability insurer before settlement.

Specifically, GEICO's representative, a claims adjuster named **Amy**, stated to the Plaintiff that GEICO the following statements on at least 15 different phone conversations, further verified by notes, recordings and emails:

**Statement 1.** "Geico can't legally make an offer unless we receive all medical documents, and then I can provide you settlement numbers."

**Statement 2.** "The only way GEICO can legally provide a settlement or speak with me regarding numbers is unless I provide them all of my doctor's notes from providers, and then I can provide you settlement numbers."

**Statement 3.** "Geico will provide a settlement offer on this day…"

**Statement 4.** "Geico is legally required" to obtain a summary or verification of Medicare and TRICARE lien payments **prior** to making a settlement offer. This assertion is **false**, legally unfounded, and contradicted by both statutory and case law.

This representation by GEICO was further contradicted when a **prior GEICO representative made a settlement offer of $3,000** without requesting or receiving any Medicare or TRICARE lien summaries **(See Exhibit A attached).** Such inconsistency demonstrates that the claim of legal necessity is pretextual, false, and a **delay tactic** intended to pressure the Plaintiff into settling for less than the full value of his claim.

Under the **Medicare Secondary Payer Act** and CMS's own guidance, there is **no legal barrier to settlement prior to receiving lien amounts**, and liability insurers are not absolved of payment obligations due to unresolved lien reporting. Federal courts have confirmed that **insurers may not condition settlements on lien resolution** when liability is clear. See, e.g., *Estate of McCall v. United States*, 206 F. Supp. 3d 1304 (N.D. Fla. 2016) and *Calderon v. GEICO Gen. Ins. Co.*, No. 1:19-CV-362, 2021 WL 254667 (M.D.N.C. Jan. 26, 2021).

In addition, Defendant GEICO's conduct violates **North Carolina's Unfair Claims Settlement Practices Act (N.C. Gen. Stat. § 58-63-15(11))** and the **Unfair and Deceptive Trade Practices Act (N.C. Gen. Stat. § 75-1.1)**, which prohibit misrepresentation of legal rights and obligations, and the use of delay to avoid or suppress settlement.

Defendant GEICO's actions also breach the implied **covenant of good faith and fair dealing**, as acknowledged in North Carolina case law including:

- *DENC, LLC v. Philadelphia Indem. Ins. Co.*, 426 F. Supp. 3d 151 (M.D.N.C. 2019);

- *Country Club of Johnston Cnty. v. U.S. Fid. & Guar. Co.*, 150 N.C. App. 231, 563 S.E.2d 269 (2002);

- *Robinson v. N.C. Farm Bureau Ins. Co.*, 86 N.C. App. 44, 356 S.E.2d 392 (1987).

As a direct and proximate result of Defendant GEICO's unlawful conduct, the Plaintiff has suffered financial losses, worsening physical conditions due to delayed treatment, prolonged emotional distress, and interference with his federally protected rights.

## V. LEGAL ARGUMENT: GEICO'S DELAY TACTICS BASED ON MEDICARE/TRICARE LIENS LACK LEGAL BASIS AND CONSTITUTE BAD FAITH

Plaintiff respectfully submits that Defendant GEICO's refusal to make a settlement offer until Plaintiff provides proof of Medicare and/or TRICARE liens is not required by law and constitutes a deliberate delay tactic that violates both federal and state law. GEICO has been in possession of sufficient documentation for months, including Plaintiff's medical records, diagnoses, bills, and evidence of injury. Its continued refusal to make an offer under the pretext of needing lien information has caused Plaintiff unnecessary financial hardship and emotional distress.

There **is no statute, regulation, or court ruling that mandates** the injured party to provide lien documentation before an insurer can issue a settlement offer. To the contrary:

1. **Under the Medicare Secondary Payer Act, 42 U.S.C. § 1395y(b)(2)**, and implementing regulations **42 C.F.R. §§ 411.24 and 411.26**, the primary legal obligation to reimburse Medicare for conditional payments rests with the **Medicare beneficiary** — the injured party — not the liability insurer. While Medicare has a right to seek reimbursement from settlement proceeds, this does not preclude the insurer from making an offer or completing a settlement.

2. The **Centers for Medicare & Medicaid Services (CMS)** explicitly states:

"Medicare does not prohibit parties from settling prior to knowing the final Medicare lien amount."*(See: CMS MSPRP FAQs, CMS.gov)*

3. **TRICARE** operates under a similar framework, pursuant to **10 U.S.C. § 1095** and **32 C.F.R. § 220.13**, which permit government recovery of medical costs but do not impose a legal barrier to settlement until lien resolution. Like Medicare, the burden of reimbursement falls on the injured party, not the insurer.

4. Courts have confirmed that **settlement is not contingent** on lien resolution. In *Estate of McCall v. United States*, 206 F. Supp. 3d 1304 (N.D. Fla. 2016), the court clarified that Medicare lien obligations **do not bar settlement** and that **delaying settlement on such grounds is improper**. Similarly, in *Mathis v. Leavitt*, 554 F.3d 731 (8th Cir. 2009), the court reiterated that the Medicare beneficiary, not the insurer, bears the primary repayment duty.

Despite these well-settled legal standards, GEICO representative "Amy" stated that GEICO could not make any offer "until Medicare and TRICARE lien summaries were submitted." This assertion is legally incorrect. GEICO's own prior representative made a settlement offer of $3,000 **without requesting any such lien information**, exposing the contradiction and revealing the current position as a pretextual delay.

Under North Carolina law, this conduct violates the **Unfair Claims Settlement Practices Act, N.C. Gen. Stat. § 58-63-15(11)**, which prohibits:

- Misrepresenting pertinent facts or insurance policy provisions,

- Failing to acknowledge and act promptly upon communications with respect to claims, and

- Failing to affirm or deny coverage within a reasonable time.

It further constitutes an unfair and deceptive act or practice in violation of **N.C. Gen. Stat. § 75-1.1**, and supports a tort claim for **bad faith insurance practices**, as recognized in:

- *Robinson v. N.C. Farm Bureau Ins. Co.*, 86 N.C. App. 44, 356 S.E.2d 392 (1987);

- *DENC, LLC v. Philadelphia Indem. Ins. Co.*, 426 F. Supp. 3d 151 (M.D.N.C. 2019); and

- *Dailey v. Integon Gen. Ins. Corp.*, 75 N.C. App. 387 (1985).

These cases confirm that insurers may be held liable in tort when they **unreasonably delay settlement**, misrepresent the law, or engage in deceptive practices that harm the claimant.

While insurers often prefer to wait until lien information is available as a matter of internal practice, that practice is **not the law**, and cannot be used to justify indefinite or unreasonable delay — especially when liability is clear and injuries are substantial.

Accordingly, GEICO's conduct in withholding settlement based on nonexistent legal requirements constitutes:

- **Bad faith** under common law,

- **Statutory violations** under North Carolina law,

- And **unlawful interference** with Plaintiff's right to timely compensation under federal law.

## VII. PRAYER FOR RELIEF

**Wherefore,** the Defendant's actions entitle the Plaintiff to compensatory and punitive damages, as well as injunctive and declaratory relief, pursuant to state and federal law and thus respectfully prays that this Honorable Court enter judgment in his favor and grant the following relief:

1. **For an order compelling GEICO to immediately preserve, without alteration or deletion, all internal notes, records, communications, and data** in their possession that reference or relate to the Plaintiff, this will provide further credibility and factual support for the Plaintiff's claims.

2. **For an order requiring GEICO to produce and provide to both the Court and the Plaintiff a complete copy of all documents, claim files, internal notes, audio recordings,** and any other records within its custody, control, or access that pertain to the Plaintiff and the subject matter of this case, as this information is essential to establishing the truth and substantiating the Plaintiff's allegations.

3. **For an order compelling GEICO to immediately tender the full $30,000 policy limits** of Defendant Ratliff's automobile liability coverage, as liability is clear and damages exceed policy limits—consistent with outcomes in third-party bad faith contexts, where excess judgments have been awarded over policy limits (e.g., *Kusulas v. GEICO*, where plaintiff recovered excess judgments following insurer's failure to settle before trial).

4. **For compensatory damages in the amount of $500,000,** separate from policy limits, for medical expenses; pain and suffering; emotional distress; loss of enjoyment of life; treatment delays; financial hardship; and other harm proximately caused by GEICO's bad faith conduct including misrepresentations and undue delays. Courts applying N.C. law and federal interpretations have recognized such consequential damages arising from insurer misconduct (e.g., *Browder v. State Farm*, W.D.N.C. 2021) .

5. **For punitive damages in the amount of $500,000,** pursuant to **N.C. Gen. Stat. § 1D15,** based on GEICO's willful, wanton, malicious, and deceptive claims-handling practices, which included illegal misrepresentations under **N.C. Gen.**

Stat. §§ **586315(11)** and **751.1**. North Carolina Courts continue to support punitive relief in insurance bad faith cases (e.g., *In re COVIDrelated coverage*, 2024 NC Supreme Court decision affirming insurer liability for wrongful denial) .

6. **For declaratory and injunctive relief**, finding GEICO's delay tactics unlawful and ordering it to cease misrepresentation of legal requirements, comply with the Medicare Secondary Payer Act (42 U.S.C. § 1395y(b)), and promptly settle claims when liability is clear—consistent with equitable remedies applied in insurance litigation to deter systemic misconduct.

7. **For pre- and post-judgment interest** at the maximum rate allowed by law.

8. **For reasonable attorney's fees, expert fees, and all costs of this action**, pursuant to **N.C. Gen. Stat. § 7516.1**, and based on statutory authorization for fees in unfair or deceptive trade practice claims.

9. **For such other and further legal and equitable relief** as the Court deems just, proper, and necessary to address all injuries and hold GEICO accountable under both federal and state law.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

X .    BrandoNRAkins

**Brandon R. Akins**
392 Wedgefield Dr.
Raeford, NC 28376
(910) 221-2257
sgtbrandonakins@gmail.com
**Plaintiff, Pro Se**