# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

BRANDON RULUND AKINS,           )
                                )
                Plaintiff,      )
                                )
        v.                      )          1:25cv712
                                )
TASHI LATWON RATLIFF, et al.,   )
                                )
                Defendants.     )

## MEMORANDUM OPINION, ORDER, AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter comes before the undersigned United States Magistrate Judge on an Application to Proceed in District Court Without Prepaying Fees or Costs (Docket Entry 1) (the "Application") filed by Brandon Rulund Akins (the "Plaintiff") in conjunction with Plaintiff's pro se complaint (Docket Entry 2) (the "Complaint") against, as relevant here, GEICO Indemnity Company (the "Defendant") (see id. at 1).[1]  For the reasons that follow, the undersigned will (i) grant the Application for the limited purpose of recommending dismissal of Plaintiff's lone federal claim, under 28 U.S.C. § 1915(e)(2)(B), for failure to state a claim, as well as dismissal without prejudice of any state claim(s) under 28 U.S.C. § 1367(c)(3), and (ii) resolve ancillary motions relevant to the Application and Complaint (see Docket Entries 7, 13, 21, 23, 26).

---

[1]  Docket Entry page citations utilize the CM/ECF footer's pagination.

"The federal *in forma pauperis* statute, enacted in 1892 and presently codified as 28 U.S.C. § 1915, is designed to ensure that indigent litigants have meaningful access to the federal courts." Neitzke v. Williams, 490 U.S. 319, 324 (1989).  To balance this public interest with the potential administrative burden on the courts, the statute provides, in relevant part, that "the court shall dismiss the case at any time if the court determines that the action . . . fails to state a claim on which relief may be granted," 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint falls short of that requirement when it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal citations omitted) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  Further, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.[2]

---

2  Although "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must
(continued...)

2

## BACKGROUND

The Complaint seeks relief against Defendant (see Docket Entry 2 at 14-15) for its alleged "failure to comply with its obligations under the Medicare Secondary Payer Act ('MSPA')" (id. at 2), see 42 U.S.C. § 1395y, its "breach of [the] common law duty of good faith and fair dealing" (Docket Entry 2 at 2), and its "repeated violations of the North Carolina Unfair Claims Settlement Practices Act, N.C. Gen. Stat. § 58-63-15(11), and the Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1" (Docket Entry 2 at 2).[3]

---

2(...continued)
be held to less stringent standards than formal pleadings drafted by lawyers," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal citation and quotation marks omitted), the United States Court of Appeals for the Fourth Circuit has "not read *Erickson* to undermine *Twombly*'s requirement that a pleading contain more than labels and conclusions," Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (internal quotation marks omitted) (dismissing pro se complaint); accord Atherton v. District of Columbia Off. of Mayor, 567 F.3d 672, 681-82 (D.C. Cir. 2009) ("A *pro se* complaint . . . 'must be held to less stringent standards than formal pleadings drafted by lawyers.'  But even a pro se complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" (first quoting Erickson, 551 U.S. at 94; then quoting Iqbal, 556 U.S. at 679)).

3  In addition to Defendant and its insured, the Complaint named "Government Employees Insurance Company (GEICO)" and "Geico Insurance Company, LLC" as defendants upon its filing.  (Docket Entry 2 at 1.)  Plaintiff thereafter moved twice to amend the caption and clarify his claims against Defendant, rather than the other entities named in the Complaint.  (See Docket Entries 13, 26.)  Defendant "consent[ed] to Plaintiff's [first] request" (Docket Entry 17 at 1) to "remov[e ] other named entities [aside from Defendant]" (Docket Entry 13 at 2) and did not respond to the second, substantially similar motion (see Docket Entry 26; Docket

(continued...)

According to the Complaint:

On or about the evening of July 25, 2024, at approximately 9:00 p.m., Plaintiff [ ] operated his vehicle lawfully and responsibly when he was violently rear-ended by a vehicle operated by Defendant['s insured] . . . [who] was at the time insured by Defendant [ ].

The force of the collision caused immediate and serious physical injuries to [ ] Plaintiff, necessitating emergency medical attention and transport via ambulance to Hoke Hospital.

Plaintiff was diagnosed and treated for multiple injuries, including:

- Acute cervical and lumbar strains
- Paraspinal tenderness
- Persistent migraines
- Concussion-like symptoms including dizziness, lethargy, confusion, and vision disturbances
- Psychological trauma

These injuries required, and continue to require, ongoing treatment including physical therapy and psychological counseling.

On or about date [sic], [Defendant] offered Plaintiff a settlement of $3,000 without requiring any Medicare or TRICARE lien documentation. However, this directly contradicts [Defendant's] current position and demonstrates an inconsistent and unreasonable delay tactic.

---

3(...continued)
Entries dated Nov. 17, 2025, to present). The undersigned will therefore grant the first of those motions (Docket Entry 13) as to the termination of "Government Employees Insurance Company (GEICO)" and "Geico Insurance Company, LLC" (id. at 1-2) as defendants and will terminate the second motion (Docket Entry 26) as moot. See Fed. R. Civ. P. 15(a)(2). Additionally, Plaintiff pursued a negligence claim against Defendant's insured (see Docket Entry 2 at 4) before settling with that individual (see Docket Entry 25 at 1-2 (noticing voluntary dismissal of Defendant's insured); id. at 4-5 (providing copy of written release)).

4

(Id. at 3-4 (paragraph numbering, parenthetical, internal brackets, and stray quotation mark omitted); see also Docket Entry 2-1 at 1; Docket Entry 2 at 10 (alleging that "Plaintiff declined to accept [Defendant's] inadequate offer").)

The Complaint further alleges that "Defendant . . . has acknowledged liability and issued partial [p]ayments to [ ] Plaintiff in the amount of: $18,846.37 for the total loss of [ P]laintiff's vehicle [and] $788.72 for rental car reimbursement" (id. at 4 (bullet points omitted)) and that "the remaining dispute pertains solely to damages, not liability" (id. at 5).

Continuing, the Complaint alleges:

Plaintiff provided [Defendant] with clear, undeniable, and thoroughly documented evidence of medical expenses, physical injuries, and legal liability stemming from the July 25, 2024 collision caused by Defendant['s insured]. These irrefutable facts were supported by hospital records, diagnostic imaging, therapy notes, and incident reports which left no reasonable doubt regarding the extent of the damages or [ ] Defendant's responsibility. [Defendant's] refusal to engage fairly, despite this overwhelming documentation, constitutes a severe and deliberate breach of its duty to act in good faith.

Over the course of several months, Plaintiff consistently communicated with [Defendant], submitting multiple requests for resolution via phone calls, emails, portal messages, and formal written notices for a settlement instead of litigation. At each turn, [Defendant] either ignored or misrepresented the law about legal requirements, intentionally delaying a response, [and] refusing to enter into good-faith negotiations.

(Id.; see also id. at 5-6 (alleging that Defendant's "representative made false and obstructive statements approximately 20 times" and listing allegedly false and obstructive statements).)

Additionally, the Complaint alleges that "Plaintiff is enrolled in both Medicare and TRICARE and, as a result of injuries sustained in the [ ] collision, incurred substantial medical expenses related to treatment, therapy, and diagnostic care." (Id. at 8; see also id. at 11 (alleging that "Plaintiff is a Medicare recipient with TRICARE as secondary insurance").) According to the Complaint, Defendant "[f]alse[ly s]tate[d]" that it "is legally required to obtain a summary of verification of Medicare and TRICARE lien payments prior to making a settlement offer or discussing settlement numbers with [ ] Plaintiff." (Id. at 6 (internal quotation marks omitted).) That statement, the Complaint alleges, "is entirely inaccurate and serves as a delay tactic" (id. at 10).

Moreover, the Complaint alleges that "Plaintiff provid[ed Defendant with] all medical notes, bills and billing statements from Tricare" (id. at 6; see also id. at 11 (alleging that "Plaintiff submitted all required documentation to Defendant [ ], including proof of significant injuries and medical expenses exceeding $25,000")). The Complaint further alleges that Defendant's "continued refusal to make an offer [of settlement] under the pretext of needing lien information" (id. at 12) caused "Plaintiff [to] suffer[] financial losses, worsening physical conditions due to delayed treatment, prolonged emotional distress, and interference with his federally protected rights" (id.), all of

6

which "should be compensated accordingly" (id. at 8; see also id. at 14-15 (requesting, among other forms of relief, "compensatory damages in the amount of $500,000" and "punitive damages in the amount of $500,000")).

**DISCUSSION**

## I.  Failure to State a Claim

Plaintiff seeks relief against Defendant for its alleged "failure to comply with its obligations under the Medicare Secondary Payer Act" (id. at 2).

"During the initial years of the Medicare program after its enactment in 1965, Medicare acted as the first payer for many medical services . . . .  In 1980 and 1981, in part due to rising Medicare costs, Congress enacted and amended the Medicare Secondary Payer statute."  Marietta Mem'l Hosp. Emp. Health Benefit Plan v. DaVita Inc., 596 U.S. 880, 882 (2022).  "That statute as amended makes Medicare a 'secondary' payer," id. at 882-83, "in certain circumstances when both Medicare and a non-Medicare entity have independent duties to pay for a covered person's healthcare costs," DaVita Inc. v. Virginia Mason Mem'l Hosp., 981 F.3d 679, 684 (9th Cir. 2020).  The MSPA "creates a federal coordination of benefits between primary and secondary payers.  Worker's compensation plans, liability insurance plans, and no fault insurance plans act as primary payers, and Medicare benefits act as secondary payers." Humana Ins. Co. v. Paris Blank LLP, 187 F. Supp. 3d 676, 677-78

7

(E.D. Va. 2016) (internal citations omitted). "When a primary plan is responsible for payment for medical services, a secondary payer may make a conditional payment on behalf of the beneficiary and then seek recovery for such conditional payment from the primary plan." Id. at 678.

"The MSP[A ] provides two mechanisms for enforcing a primary plan's recoupment obligation. First, the United States may sue to recover the amount from the primary plan or from the individual or entity to whom the primary plan has paid the funds." Penegar v. Liberty Mut. Ins. Co., 115 F.4th 294, 297 (4th Cir. 2024) (citing 42 U.S.C. § 1395y(b)(2)(B)(iii)). "Second, and pertinent to [this] case, private parties may sue to recover double damages from a primary plan that has failed to provide for primary payment in accordance with the MSP[A ]." Id. (citing 42 U.S.C. § 1395y(b)(3)(A)). "The ostensible purpose of [the private cause of action] . . . is 'to help the government recover conditional payments from insurers or other primary payers.'" Id. at 298 (quoting Netro v. Greater Balt. Med. Ctr., Inc., 891 F.3d 522, 524 (4th Cir. 2018)).

Turning to the text of the statute, the MSPA "establishe[s] a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A)" of

8

subsection (b) of the statute. 42 U.S.C. § 1395y(b)(3)(A).[4] "Paragraph (2)(A) . . . forbids Medicare from paying for services when a primary plan is responsible, 'except as provided in subparagraph (B).'" MSPA Claims 1, LLC v. Kingsway Amigo Ins. Co., 950 F.3d 764, 771 (11th Cir. 2020) (quoting 42 U.S.C. § 1395y(b)(2)(A)). In turn, "subparagraph (B) states that a primary plan must reimburse Medicare '*if it is demonstrated* that such primary plan *has or had a responsibility* to make payment with respect to such item or service.'" Id. (quoting § 1395y(b)(2)(B)(ii)). "A primary plan's responsibility for such payment," according to the MSPA, "may be demonstrated by a judgment, a payment conditioned upon the recipient's compromise, waiver, or release (whether or not there is a determination or admission of liability) of payment for items or services included in a claim against the primary plan or the primary plan's insured, or by other means." 42 U.S.C. § 1395y(b)(2)(B)(ii).[5]

---

4 Paragraph (1) sets forth "[r]equirements of group health plans," 42 U.S.C. § 1395y(b)(1), not implicated here.

5 "Other means" of demonstrating responsibility to pay "must involve an enforceable obligation such as a judgment or settlement," Caldera v. Ins. Co. of the State of Pa., Civ. Action No. 11-321, 2012 WL 360183, at *4 (S.D. Tex. Feb. 2, 2012), aff'd on other grounds, 716 F.3d 861 (5th Cir. 2013); see also Sullivan v. Farm Bureau Mut. Ins. Co. of Mich., No. 1:10cv909, 2011 WL 1231264, at *3 (W.D. Mich. Apr. 1, 2011) (requiring a showing of "something akin to judicial determination or settlement").

9

Accordingly, "[t]he private cause of action under the MSPA requires three elements: (1) a primary plan, (2) that is responsible to pay for an item or service, and (3) that failed to make the appropriate payment to Medicare for the item or service." Sims v. PMA Ins. Co., No. 1:20cv249, 2021 WL 369675, at *7 n.8 (M.D.N.C. Feb. 3, 2021).

As to the first element, the term "primary plan" includes, as relevant here, "an automobile or liability insurance policy or plan," 42 U.S.C. § 1395y(b)(2)(A)(ii). The second and third elements of an MSPA claim represent "two important conditions precedent that must be satisfied prior to invoking this cause of action. First, Medicare must have actually made payments on Plaintiff's behalf." Sullivan v. Farm Bureau Mut. Ins. Co. of Mich., No. 1:10cv909, 2011 WL 1231264, at *3 (W.D. Mich. Apr. 1, 2011) (internal quotation marks and citation omitted). See also, e.g., Leggette v. B.V. Hedrick Gravel & Sand Co., No. 3:04cv530, 2006 WL 6809606, at *11 (W.D.N.C. May 24, 2006) ("[An] MSP[A] 'double damages' claim may be maintained only where Medicare has, in fact, paid claims that a primary insurer should have, but refused, to pay."). "The second condition precedent is that the insurer must be 'responsible' for making the payments." Sullivan, 2011 WL 1231264, at *3. "Until [a d]efendant['s] responsibility to pay for a Medicare beneficiary's expenses has been demonstrated (for example, by a judgment), [a d]efendant['s] obligation to

10

reimburse Medicare does not exist under the relevant provisions." Glover v. Liggett Grp., Inc., 459 F.3d 1304, 1309 (11th Cir. 2006).

Here, the Complaint fails to allege the existence of any payments made on Plaintiff's behalf by Medicare; instead, it merely alleges that "Plaintiff is a Medicare recipient" (Docket Entry 2 at 11) who "incurred substantial medical expenses" (id. at 8), and that the "total cost of [those] medical expenses exceeds $25,000" (id. at 4). Even liberally construed, these allegations fall short of "[t]he requirement of actual payment by Medicare as a prerequisite to maintaining a[n MSPA] action," Leggette, 2006 WL 6809606, at *11, as nothing in the Complaint indicates that Medicare or its affiliates "incurred costs covering [Plaintiff's] medical expenses," MSP Recovery Claims, Series LLC v. Grange Ins. Co., No. 5:19cv219, 2019 WL 6770729, at *17 (N.D. Ohio Dec. 12, 2019), which a primary payer (such as Defendant) should have born, or for which Plaintiff may properly seek "reimbursement," 42 U.S.C. § 1395y(b)(3)(A), under the MSPA.[6] "Moreover, absent [allegations

---

6    The Complaint's allegations that "Plaintiff provid[ed Defendant with] all medical notes, bills and billing statements from Tricare" (Docket Entry 2 at 6 (emphasis added)) — "a federal health insurance program administered by [the Department of Defense] to provide medical care to current and retired service members and their families," County Bd. of Arlington Cnty. v. Express Scripts Pharmacy, Inc., 996 F.3d 243, 248-49 (4th Cir. 2021) (internal quotation marks and brackets omitted) — also prove insufficient, because only "the United States [or its authorized representative] may institute and prosecute legal proceedings against a third party payer to enforce a right of the United States under [TRICARE]," 32 C.F.R. § 220.7(a)-(b); see also 10 U.S.C.
(continued...)

11

concerning Plaintiff's] submission of [his medical] claims to and payment of at least some portion of them by Medicare, it [would be] impossible to calculate the amount of damages subject to doubling," Leggette, 2006 WL 6809606, at *11, further rendering the Complaint's allegations insufficient. See id. (explaining that "the baseline for double damages is not the amount billed by the provider, but the damages Medicare actually incurred as a result of the primary plan's failure to pay" (citing 42 U.S.C. § 1395y(b)(3)(A))).

The Complaint also fails to allege facts "demonstrat[ing] that [a] primary plan has or had a responsibility to make a payment with respect to" Plaintiff's medical expenses. 42 U.S.C. § 1395y(b)(2)(B)(ii). As noted above, "[o]ne way to demonstrate such a responsibility is by showing that the primary plan had a contractual obligation to pay." MSP Recovery Claims, Series LLC v. American Fam. Connect Prop. & Cas. Ins. Co., No. 23cv20105, 2023 WL 2536444, at *3 (S.D. Fla. Mar. 16, 2023) (brackets and internal

---

6(...continued)
§ 1095(e)(1) ("The United States may institute and prosecute legal proceedings against a third-party payer to enforce a right of the United States under this section."). However, even if the Complaint's allegations that (A) "Plaintiff is a Medicare recipient with TRICARE as secondary insurance" (Docket Entry 2 at 11) and (B) TRICARE produced "bills and billing statements" to Plaintiff (id. at 6) combined to support the inference that (C) Medicare incurred expenses, too, given TRICARE's status "as secondary" to Medicare (id. at 11 (emphasis added)), the Complaint nonetheless fails to allege Defendant's demonstrated responsibility to reimburse Medicare's expenses, as explained in the discussion that follows above.

quotation marks omitted). Despite alleging that Defendant "acknowledged liability and issued partial [p]ayments . . . for the total loss of [ P]laintiff's vehicle . . . [and his] rental car [expenses]" (Docket Entry 2 at 4), the Complaint does not allege the existence of a settlement agreement that could "demonstrate[] . . . [Defendant's] responsibility," 42 U.S.C. § 1395y(b)(2)(B)(ii), to reimburse Medicare for Plaintiff's medical expenses.[7] On the contrary, the Complaint attempts to hold Defendant liable for its "<u>refusal</u> to make a settlement offer" (Docket Entry 2 at 12 (emphasis added); <u>see also</u> <u>id.</u> at 2 (alleging "delay and obstruction of settlement"), 5 (alleging that Plaintiff "submitt[ed]" and Defendant "ignored" multiple "written notices for a settlement instead of litigation"), 6 (alleging existence of

---

[7] The Complaint's contention that, because Defendant "acknowledged liability and issued partial payments" for Plaintiff's vehicle and rental car expenses (Docket Entry 2 at 4), "the [instant] dispute pertains solely to damages, not liability" (<u>id.</u> at 5) represents a legal conclusion which the Court need not accept at this stage of the proceedings, <u>see</u> <u>Iqbal</u>, 556 U.S. at 678. Moreover, as a general matter, "[Defendant's] payment of *property* damages cannot create an acknowledg[]ment of its liability for [Plaintiff's] *personal* injuries," <u>Denis v. Liberty Mut. Ins. Co.</u>, 791 F.2d 846, 849 (11th Cir. 1986), nor can it "demonstrate[ Defendant's] . . . responsibility," 42 U.S.C. § 1395y(b)(2)(B)(ii), to reimburse Medicare for the cost of those injuries. Likewise, Defendant's "offer[ of] a settlement of $3,000" (Docket Entry 2 at 4) cannot suffice "to prove the validity of the claim [against Defendant] that the [ ] offer was meant to settle," <u>Macsherry v. Sparrows Point, LLC</u>, 973 F.3d 212, 224 (4th Cir. 2020); <u>see also</u> <u>Sharp v. City of Elizabeth City</u>, No. 2:23cv52, 2023 WL 9051270, at *3 (E.D.N.C. Dec. 29, 2023) (refusing to "consider [a] settlement demand for purposes of determining whether [the] plaintiff has stated a valid claim").

13

promises to "provide a settlement offer" which "[Defendant] failed to honor" (internal quotation marks omitted)), 14 (alleging that Defendant "withh[eld] settlement")). That attempt falls short, however, as "[t]he MSP[A] itself does not impose a duty to pay on [Defendant but] . . . [i]nstead[ ] presupposes an existing obligation," <u>Virginia Mason Mem'l Hosp.</u>, 981 F.3d at 684 (internal quotation marks omitted), which the Complaint does not plead. <u>See also</u> <u>Fresenius Med. Care Holdings, Inc. v. Brooks Food Grp., Inc.</u>, Civ. Action No. 3:07cv14, 2007 WL 2480251, at *7-8 (W.D.N.C. Aug. 28, 2007) (explaining that "[t]he MSPA makes it a condition precedent to reimbursement that there be a 'demonstrated responsibility' to pay for items or services" and that "[t]o hold otherwise would open a primary insurer to double damages each time it contests a claim, rather than only when it fails to pay *after* responsibility has been established").

In sum, the Complaint fails to allege payments made by Medicare and "Defendant['s demonstrated] responsibility for th[ose] payments. If and when such a [settlement or] determination is made . . . [and] Defendant[] fail[s] to reimburse [Medicare for] the appropriate funds, then the MSPA allows for a private cause of action for double damages." <u>Fresenius</u>, 2007 WL 2480251, at *8. Absent such facts, the Complaint fails to state a claim.[8]

---

8 Alternatively, because "[Plaintiff's] suit remains contingent upon Defendant['s] failing to [reimburse Medicare] after

(continued...)

14

## II. State-Law Claims

The Complaint pursues claims against Defendant for breach of the "duty of good faith and fair dealing" (Docket Entry 2 at 5; accord id. at 12) and "violat[ions of] North Carolina's Unfair Claims Settlement Practices Act . . . and the Unfair and Deceptive Trade Practices Act" (id. at 12; accord id. at 9, 13, 14-15).

Facts supporting jurisdiction must appear in the complaint, see Pinkley, Inc. v. City of Frederick, 191 F.3d 394, 399 (4th Cir. 1999), and the party asserting federal jurisdiction bears the burden of "show[ing] that jurisdiction does, in fact, exist," Davis v. Pak, 856 F.2d 648, 650 (4th Cir. 1988) (internal quotation marks omitted). Here, the Complaint invokes (A) the Court's "original jurisdiction under 28 U.S.C. § 1331" (Docket Entry 2 at 3), alleging that "Plaintiff's [MPSA] claims arise under the laws the United States" (id.), and (B) the Court's "supplemental jurisdiction over Plaintiff's state law claims" (id.).

---

8(...continued)
[a demonstration of its responsibility to pay] occurs . . . [Plaintiff's] claim is not currently fit for judicial decision . . . [and] should be dismissed as premature." Sims, 2021 WL 369675, at *7; see also id. at *5-7, *7 n.8 (dismissing MSPA for failure to plead both responsibility to pay and failure to pay/reimburse and noting that a "merits analysis would turn on the same factors affecting the jurisdictional analysis"); Sullivan, 2011 WL 1231264, at *3 ("[The p]laintiff's original [c]omplaint attempts to simultaneously litigate his MSP[A] claim with the underlying claim.  The MSP[A] claim is accordingly premature . . . ."); Mason v. American Tobacco Co., 346 F.3d 36, 43 (2d Cir. 2003) ("[T]he trigger for bringing a[n] MSP[A] claim is not the pendency of a disputed tort claim, but the established obligation to pay medical costs . . . ." (internal quotation marks omitted)).

15

Federal courts possess "original jurisdiction of all civil actions arising under the Constitution[ and] laws . . . of the United States," 28 U.S.C. § 1331. When a court possesses federal question jurisdiction over a federal claim, "[a] claim that neither arises from a federal question nor satisfies the requirements for diversity jurisdiction may nevertheless be entertained in federal court [via] supplemental jurisdiction under 28 U.S.C. § 1367." Mebane v. GKN Driveline N. Am., Inc., 499 F. Supp. 3d 220, 231 (M.D.N.C. 2020). "Under supplemental jurisdiction, '[t]he state and federal claims must derive from a common nucleus of operative fact' where a plaintiff 'would ordinarily be expected to try them all in one judicial proceeding.'" Id. (quoting United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966)).

Importantly, supplemental jurisdiction constitutes "a doctrine of discretion," United Mine Workers, 383 U.S. at 726, in regards to which "[n]eedless decisions of state law should be avoided," id. As such, if "federal claims are dismissed before trial, . . . the state claims should be dismissed as well." Id.; see also 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . [if] the district court has dismissed all claims over which it has original jurisdiction[.]").

Although Plaintiff's MSPA claim raises a federal question, the Complaint pursues state-law claims which arise under North Carolina

16

law[9] and thus do not satisfy federal question jurisdiction. Therefore, given the foregoing recommendation of dismissal of Plaintiff's federal claim, the Court should decline to exercise supplemental jurisdiction over Plaintiff's state-law claims. See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered . . . — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims.").[10]

### III.  Ancillary Motions

In addition to the Application, Complaint, and the motions to amend resolved in footnote 3 above, this case comes before the undersigned on Defendant's Motion to Dismiss (Docket Entry 7) ("Dismissal Motion"), Defendant's Motion to Strike Plaintiff's

---

9  "North Carolina [law, rather than federal law,] recognizes a cause of action for a breach of the implied covenant of good faith and fair dealing," Nadendla v. WakeMed, 24 F.4th 299, 307 (4th Cir. 2022) (emphasis added), and Plaintiff's claims for "[s]tatutory violations under North Carolina law" (Docket Entry 2 at 14) plainly arise under state law.

10  Additionally, diversity of citizenship jurisdiction — which the Complaint does not invoke (see Docket Entry 2 at 3) — does not exist for Plaintiff's state-law claims because the Complaint fails to allege Defendant's citizenship (see id. at 2 (alleging only Plaintiff's status as a "resident of . . . North Carolina")).  See also MicroPicture Int'l, Inc. v. Kickartz, No. 3:05cv34, 2005 WL 8174556, at *1 (W.D. Va. July 25, 2005) ("[A] party alleging jurisdiction based on diversity of citizenship clearly must state the citizenship of all parties involved in the action.").

17

Surreply to the Dismissal Motion (Docket Entry 23) ("Motion to Strike"), and Plaintiff's Motion for "In Camera Inspection of Exhibit A" (Docket Entry 21) ("Inspection Motion"), which Plaintiff attached to his response in opposition the Dismissal Motion (see Docket Entry 15-1).  (See also Docket Entry dated Dec. 10, 2025 (referring Inspection Motion); Docket Entry dated Feb. 19, 2026 (referring Dismissal Motion and Motion to Strike).)

In light of the foregoing recommendation that the Court dismiss this action, the undersigned (A) will terminate the Motion to Strike as moot and (B) will recommend that the Court terminate the Dismissal Motion as moot.  Likewise, the Inspection Motion asks the "Court to conduct an in-camera inspection of [ ] transcribed audio recordings" (Docket Entry 21 at 1 (emphasis omitted)) submitted with Plaintiff's response to the Dismissal Motion (see Docket Entry 15; Docket Entry 15-1).  The undersigned has reviewed, and thus "inspected," those materials (which appear on the public docket and generally amount to verified pleadings (see, e.g., Docket Entry 15-1 at 2)) in the course of addressing the Dismissal Motion, Application, and Complaint, and will therefore terminate the Inspection Motion as moot.

### IV.  Plaintiff's Inaccurate Pleadings

Lastly, in recommending dismissal of the instant action, the undersigned also admonishes Plaintiff for failing to confirm the accuracy of his pleadings, as required under Federal Rule of Civil

18

Procedure (the "Rules") 11, and warns Plaintiff that any future filings containing errant or fabricated citations may result in sanctions, including orders to pay an opposing party's reasonable attorney's fees. See Fed. R. Civ. P. 11(c).

Rule 11(b) provides, in relevant part, that:

> By representing to the court a pleading, written motion, or other paper . . . [an] unrepresented party certifies that to the best of the persons's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.

Fed. R. Civ. P. 11(b) (emphasis added).

"Rule 11 applies to pro se parties as well as parties represented by counsel." Walker v. Tillerson, No. 1:17cv732, 2018 WL 1187599, at *9 (M.D.N.C. Mar. 7, 2018), aff'd sub nom. Walker v. Pompeo, 735 F. App'x 69 (4th Cir. 2018). "All litigants, *pro se* and practitioners [alike], must ensure that the legal authority they cite actually exists and is properly characterized in all filings." United States v. Boice, No. 1:20cr167, 2025 WL 2076452, at *4 n.4 (E.D. Va. June 23, 2025).

Here, the Complaint alone contains at least 11 citations to cases that either do not exist or do not stand for the legal propositions that Plaintiff invoked. (See, e.g., Docket Entry 2 at 7, 9, 10, 11, 13 (citing Alford v. Motors Ins. Corp., 104 N.C. App. 537 (1991), Barber v. Perry, 61 N.C. App. 134, 300 S.E.2d 387 (1983), Estate of Harvey v. Kore-Kut, Inc., 364 N.C. 394, 700

19

S.E.2d 231 (2010), <u>Estate of McCall v. United States</u>, 206 F. Supp. 3d 1304 (N.D. Fla. 2016), and <u>Calderon v. GEICO Gen. Ins. Co.</u>, No. 1:19cv362 (M.D.N.C. Jan. 26, 2021) — **none** of which exist at those citations); <u>id.</u> at 14 (citing "<u>Kusulas v. GEICO</u>" without further identifying information), 15 (citing "<u>In re. COVIDrelated coverage</u>, [as a] 2024 NC Supreme Court decision affirming insurer liability for wrongful denial," despite a cursory search revealing that the only potentially relevant North Carolina Supreme Court decision from that year affirmed <u>dismissal</u> of a plaintiff's insurance-related claims, <u>see</u> <u>Cato Corp. v. Zurich Am. Ins. Co.</u>, 386 N.C. 667, 676, 909 S.E.2d 144, 151 (2024)).

Similarly, Plaintiff's subsequent filings contain over a dozen dubious citations. (<u>See, e.g.</u>, Docket Entry 4 at 1, 5, 6, 8 (citing <u>Calderon</u> three times and <u>Estate of McCall</u> five times at non-existent citations); Docket Entry 5 at 3 (citing <u>United States v. Harris</u>, No. 1:19cr44, 2021 WL 1089411, at *2 (M.D.N.C. Mar. 22, 2021), and <u>Robinson v. Bowser</u>, No. 1:15cv596, 2015 WL 11571094, at *1 (M.D.N.C. Mar. 22, 2021), neither of which exists as cited); Docket Entry 8 at 3 (again citing <u>Harris</u> and <u>Bowser</u> at non-existent citations); Docket Entry 13 at 2 (citing <u>R.S. v. Board of Dirs. of Woods Charter Sch. Co.</u>, No. 1:16cv119 (M.D.N.C. Apr. 19, 2016), and stating that "[t]his Court granted a pro se plaintiff's motion to amend to add and correct parties early in litigation" in that case, despite (A) the absence of any docket entry or decision rendered in

20

R.S. v. Board on the date cited, compare id., Docket Entry 5 (Mar. 11, 2016), with id., Docket Entry 6 (May 9, 2016), and (B) the plaintiff in that case proceeding exclusively with counsel, not pro se, see id., Docket Entry 2 at 1 (noticing appearance of counsel on action's commencement); Docket Entry 26 at 3 (again citing R.S. v. Board for same unfounded proposition).)

"The [undersigned] understands that Plaintiff is proceeding pro se, but that does not allow [him] to flaunt the [ R]ules and haphazardly file pleadings without completing any due diligence." Lucas v. Scharf, No. 3:25cv1015, 2026 WL 642917, at *2 (W.D.N.C. Feb. 25, 2026); see also id. ("Even a cursory Google search would [have] reveal[ed] that these cases do not exist [as cited]."). More pointedly, Plaintiff's submissions foreground an issue that "[c]ourts across the country are grappling with," In re Nwaubani, No. 25-9517, 2026 WL 687194, at *3 (4th Cir. Mar. 11, 2026), in that citations such as Plaintiff's to "nonexistent cases . . . are the frequent posterchild" for "the use of generative [artificial intelligence] in materials submitted to the court," id.; see also Kruglyak v. Home Depot U.S.A., Inc., 774 F. Supp. 3d 767, 770 (W.D. Va. 2025) ("It has become widely known that [artificial intelligence] platforms sometimes 'hallucinate,' meaning they provide inaccurate responses.  In the legal research context, these hallucinations can include the generation of fictitious case cites and misrepresentations of case summaries or holdings[.]").

At this juncture, the undersigned need not determine "whether [Plaintiff] drafted [the foregoing pleadings] with the assistance of artificial intelligence or not," <u>Kideckel v. Foreign Nation of Can.</u>, No. 1:24cv2907, 2026 WL 125208, at *3 (D.D.C. Jan. 16, 2026) (internal quotation marks omitted), <u>appeal filed</u>, 2026 WL 125208 (Jan. 23, 2026), and need only advise that Plaintiff's citations to non-existent or wholly inapplicable authorities almost certainly contravene his obligations under Rule 11. <u>See, e.g.</u>, <u>Suiter v. Gm - Gen. Motors, LLC</u>, No. 5:24cv54, 2026 WL 701683, at *8 (W.D. Va. Mar. 12, 2026) ("Regardless of whether [the plaintiff] used these tools, submitting a filing containing fabricated authority . . . is unacceptable and . . . could also constitute a violation of [Rule] 11, for which the court may impose sanctions." (internal quotation marks omitted)). The undersigned therefore warns Plaintiff that subsequent filings containing such blatant fabrications may result in sanctions.

<strong><u>CONCLUSION</u></strong>

The Complaint fails to state a claim on which relief may be granted, and the Court should decline to exercise supplemental jurisdiction over Plaintiff's state-law claims. Consistent with that recommendation, the undersigned has resolved or recommended resolution of ancillary motions and has warned Plaintiff that filings containing citations to inaccurate or non-existent authorities may subject him to sanctions under Rule 11.

22

**IT IS THEREFORE ORDERED** (A) that the Application (Docket Entry 1) is **GRANTED** for the sole purpose of entering this Recommendation and (B) that Plaintiff is **WARNED** that the Court may impose sanctions for future failures to confirm the accuracy of his pleadings and other filings.

**IT IS FURTHER ORDERED** (A) that Plaintiff's first Motion to Amend Caption and Clarify Defendants (Docket Entry 13) is **GRANTED** as to the termination of "Government Employees Insurance Company (GEICO)" and "Geico Insurance Company, LLC" as defendants and (B) that the Inspection Motion (Docket Entry 21), the Motion to Strike (Docket Entry 23), and Plaintiff's second Motion to Amend Caption and Clarify Defendants (Docket Entry 26) are **TERMINATED AS MOOT.**

**IT IS RECOMMENDED** (A) that Plaintiff's lone federal claim be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim, as well as that the Court decline to exercise supplemental jurisdiction over Plaintiff's state claim(s) under 28 U.S.C. § 1367(c)(3), and (B) that the Dismissal Motion (Docket Entry 7) be **TERMINATED AS MOOT.**

This 28th day of April, 2026.

/s/ L. Patrick Auld

**L. Patrick Auld**
**United States Magistrate Judge**
